**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-268** |
| **MISTER TYRELL TAYLOR** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Alexander B. Bowerman, Special Assistant United States Attorney, respectfully files this sentencing memorandum regarding defendant Mister Tyrell Taylor.

**I.      INTRODUCTION**

As revealed by an extensive investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), defendant Mister Tyrell Taylor directed the straw purchase of dozens of firearms and trafficked them onto the streets of Philadelphia, where many of them were used in shootings and other crimes. On June 20, 2023, the defendant was charged in a 28-count indictment with conspiracy and aiding and abetting false statements to a federal firearms licensee, in violation of 18 U.S.C. §§ 371, 942(a)(1)(A), and 2. On November 2, 2023, the defendant pled guilty.

The government explains below its view of the proper sentencing considerations in this case, including the advisory guideline range and the § 3553(a) factors. The government recommends that the Court sentence the defendant to a term of 180 months' imprisonment, three years of supervised release, and a $2,800 special assessment.

II.    **FACTS OF THE CASE**

A.    **Firearm Straw Purchases by Nasyr Harmon-Catlin**

The defendant persuaded Nasyr Harmon-Catlin to straw purchase firearms on his behalf so the defendant could resell them. At the defendant's direction, Harmon-Catlin made false statements on ATF Form 4473s (forms that are required by law to be completed truthfully during the purchase of a firearm)—specifically, that Harmon-Catlin was the actual purchaser of the firearm, when in reality he was buying them for the defendant. The defendant decided what gun stores—that is, federal firearm licensees ("FFLs")—to visit and provided instructions on what firearms to purchase and how much to spend. The defendant would drive Harmon-Catlin to FFLs (or have another person drive them) and would either provide directions by phone or go inside the FFL with Harmon-Catlin. The defendant then paid Harmon-Catlin in cash or other forms of compensation in exchange for the illegally purchased firearms. In addition, the defendant paid Harmon-Catlin to sign paperwork transferring firearms from the defendant's name into Harmon-Catlin's name—purporting to sell the firearms to Harmon-Catlin. But the defendant kept the firearms he purported to sell in his possession. *See* PSR ¶¶ 9-11.

Between August and December 2020, the defendant directed Harmon-Catlin to straw purchase at least 48 firearms, including approximately four firearms that the defendant purported to sell to him. PSR ¶ 13. Based on police records, approximately 18 of these firearms have been recovered by law enforcement, including in connection with shootings in Philadelphia. To take just a few examples:

- On August 31, 2020, the defendant directed Harmon-Catlin to purchase a Glock, model 36, .45 caliber semi-automatic pistol.[1] Philadelphia Police recovered the pistol just nine days later in the possession of S.B., a three-time convicted felon.

- On October 4, 2020, the defendant directed Harmon-Catlin to purchase one firearm and to transfer a firearm from the defendant's name to his own. That firearm was a Glock, model 29, 10mm semi-automatic pistol.[2] Pennsylvania State Police recovered the pistol 48 days later in the possession of R.J., who lacked a license to carry a firearm.

- On October 13, 2020, the defendant directed Harmon-Catlin to purchase a Springfield, model XDS, 9mm semi-automatic pistol.[3] That firearm was recovered 56 days later in the possession of R.R., who lacked a license to carry a firearm and was carrying 28 packets of crack cocaine. The serial numbers on the firearm's slide and barrel were obliterated, but the serial number on the dust cover (which had been covered by a laser sighting device) was intact.

- On November 27, 2020, the defendant directed Harmon-Catlin to purchase four firearms, including a Glock, model 20, 10mm semi-automatic pistol.[4] That firearm was recovered by Philadelphia Police just 14 days later.

- On December 18, 2020, the defendant directed Harmon-Catlin to buy three firearms, including a Glock, model 19, .45 caliber semi-automatic pistol.[5] That

---

[1] This pistol is charged in Count Three of the indictment.
[2] This pistol is charged in Count Ten of the indictment.
[3] This firearm is charged in Count Thirteen of the indictment.
[4] This firearm is charged in Count Twenty-Two of the indictment, as are the other firearms purchased on November 27, 2020.
[5] This firearm is charged in Count Twenty-Seven of the indictment.

firearm was used 58 days later in a shooting in Philadelphia in which two people were wounded by gunfire and a third was killed.

- On December 21, 2020, the defendant directed Harmon-Catlin to purchase two firearms, including a Glock, model 36, .45 caliber semi-automatic pistol.[6] That firearm was recovered by Philadelphia Police 23 days later in the possession of K.B., who lacked a license to carry a firearm and was carrying 23 vials of crack cocaine.

*See* PSR ¶ 15.

Moreover, call detail records show that the defendant communicated with the people that were arrested in possession of the straw-purchased firearms. As mentioned above, R.J. was arrested in possession of a Glock, model 29, 10mm semi-automatic pistol that the defendant purported to sell to Harmon-Catlin. Call detail records for the defendant's phone show 89 call events between the defendant and R.J. between August 2020 and January 2021, including a call on the day the defendant purportedly transferred the firearm to Harmon-Catlin, and two calls shortly after Jones was arrested. The defendant also had contact with K.W., who was arrested by Philadelphia Police in December 2021 with a Glock, model 45, 9mm semi-automatic pistol that Harmon-Catlin bought on November 5, 2020.[7] Call detail records for the defendant's phone show more than 20 call events with K.W. between September and December 2020, including two call events the day the firearm was purchased. In contrast, call detail records for Harmon-Catlin's phone show no contact at all with any of these individuals, indicating that the defendant,

---

[6] This firearm is charged in Count Twenty-Eight of the indictment.
[7] This firearm is charged in Count Seventeen of the indictment.

not Harmon-Catlin, was the person responsible for diverting the straw-purchased firearms into the illegal firearms market. *See* PSR ¶ 15.b, 15.m.

During the course of the ATF's investigation, the defendant made false statements to agents in an attempt to conceal his activities, further showing his guilt. During an interview with ATF agents in January 2021, the defendant admitted that he knew Harmon-Catlin, and the defendant told agents that he sold Harmon-Catlin between 5 and 7 firearms through an FFL. When asked about the Glock, model 29, 10mm semi-automatic pistol that was recovered in the possession of R.J. (discussed above), the defendant said he sold the firearm to Harmon-Catlin and knew nothing about the recovery of the firearm by police. But as mentioned, the defendant's call detail records show that the defendant was in contact with R.J., both around the time the defendant transferred the firearm and around the time the firearm was recovered by law enforcement. *See* PSR ¶ 15.b.

The defendant agreed with the facts set forth above during the change of plea hearing on November 2, 2023. The defendant also agreed that text messages between Harmon-Catlin and Rasheed Lewis, a co-conspirator identified as "Person #1" in the indictment, indicated that the defendant was using the Harmon-Catlin to illegally obtain firearms, including messages like "Mister looking for u" and "bro said can u goto gun store with him again he going pay u."

B.    **Firearm Straw Purchases by Rasheed Lewis**

Like Harmon-Catlin, Rasheed Lewis straw purchased firearms at the defendant's direction starting in August 2020. As demonstrated herein, the defendant's use of Lewis to straw purchase guns for the defendant to resell constitutes "part of the same course of conduct or

common scheme or plan" as the defendant's use of Harmon-Catlin. U.S.S.G. § 1B1.3(a)(2).[8] Between August 2020 and January 2021, Lewis straw purchased fourteen firearms at the defendant's direction, making false statements on ATF Form 4473s each time.[9]

Substantial evidence supports this conclusion. An employee of The Bunker Gun Shop II stated that the defendant was a regular customer and was often in the store with Harmon-Catlin; both individuals typically paid cash for their purchases, and they would occasionally get extra magazines when purchasing firearms. The employee further stated that on a few occasions, Lewis would visit the store and purchase firearms with the defendant. In addition, an employee of King Shooters Supply stated that the defendant transferred a firearm from his own name to Lewis's name. *See* PSR ¶ 16.

ATF Form 4473s from The Bunker Gun Shop II, King Shooters Supply, Firearms 4 Less LLC, and Dusty Rhoads Police Supply indicate that Lewis purchased approximately 14 firearms between August 2020 and January 13, 2021—approximately the same timeframe that Harmon-Catlin purchased firearms. The defendant purchased the following firearms:

| Date and Dealer | Firearm(s) | Serial Number |
|---|---|---|
| August 13, 2020<br><br>King Shooters Supply<br>346 East Church Road,<br>King of Prussia, Pennsylvania | Aero Precision, model X-15, 5.56 caliber semi-automatic pistol | DLR07273 |
| August 14, 2020<br><br>Firearms 4 Less LLC<br>119 Carbon Street,<br>Easton, Pennsylvania | Spike Tactical, model ST-15, 5.56 caliber semi-automatic pistol | NSL016299 |

---

[8] Notably, however, including Lewis's firearm purchases as "relevant conduct" under Section 1B1.3 does not change the applicable offense level or guideline range.

[9] Lewis is charged with eight counts of making false statements to federal firearms licensees, in violation of 18 U.S.C. § 924(a)(1)(A). *See United States v. Lewis*, Crim. No. 24-83. A change of plea hearing is scheduled for March 28, 2024.

| August 21, 2020<br><br>King Shooters Supply<br>346 East Church Road,<br>King of Prussia, Pennsylvania | Glock, model 17, 9mm semi-automatic pistol | BNHR279 |
|---|---|---|
| October 21, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue, Chalfont, Pennsylvania | European Arms America, model Pavona, 9mm semi-automatic pistol | EAA01566 |
| October 29, 2020<br><br>Dusty Rhoads Police Supply<br>225 E. Winona Avenue, Norwood, Pennsylvania | Ruger, model 57, 5.7 x 28mm semi-automatic pistol | 64131270 |
| October 30, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue, Chalfont, Pennsylvania | Glock, model 22, .40 caliber semi-automatic pistol<br><br>Springfield Armory, model XDS, 9mm semi-automatic pistol | FPK485<br><br>XS949868 |
| November 20, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue, Chalfont, Pennsylvania | Glock, model 17, 9mm semi-automatic pistol<br><br>Glock, model 17, 9mm semi-automatic pistol<br><br>Springfield Armory, model XD, .40 caliber semi-automatic pistol | BRDB463<br><br>BRDC890<br><br>BY465980 |
| January 13, 2021<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue, Chalfont, Pennsylvania | Glock, model 19, 9mm semi-automatic pistol<br><br>Glock, model 22, .40 caliber semi-automatic pistol<br><br>Glock, model 30s, .45 Auto caliber semi-automatic pistol<br><br>Taurus, model 605, .38 Special caliber semi-automatic pistol | BNYL779<br><br>BRRN137<br><br>BGHR662<br><br>ABM208506 |

The ATF Form 4473s recovered during the ATF investigation show multiple dates on which Harmon-Catlin and Lewis purchased firearms from the same FFL holders, as well as

multiple dates on which Taylor and Lewis purchased firearms from the same FFL holders. *See* PSR ¶ 18.

According to police reports, including reports issued by the Philadelphia Police Department ("PPD"), approximately five of the firearms purchased by Lewis have been recovered by law enforcement, and three of those firearms have been used in shootings, as determined by ballistics testing and matching through the National Integrated Ballistic Information Network ("NIBIN"). One firearm (a Springfield Armory, model XD, .40 caliber semi-automatic pistol bearing serial number BY465980) was recovered by law enforcement 335 days after purchase, and another firearm (a Glock, model 17, 9mm semi-automatic pistol bearing serial number BNHR279) was used in a shooting 225 days after purchase. Another firearm (a Glock, model 17, 9mm pistol bearing serial number BRDC890) was used in a shooting just 200 days after purchase. Lewis never reported that any of the firearms he purchased were stolen. *See* PSR ¶ 19.

On at least one occasion, a firearm originally purchased by Lewis and a firearm originally purchased by Taylor were recovered in the same arrest. On July 27, 2023, PPD officers conducting narcotics surveillance arrested three suspects (who each had prior felony convictions prohibiting them from possessing firearms) and recovered two firearms: a Glock, model 30S, .45 caliber semi-automatic pistol bearing serial number BGHR662 that was originally purchased by Lewis on January 13, 2021; and a Glock, model 23, .40 caliber semi-automatic pistol bearing serial number XKL796 that was originally purchased by Taylor on November 20, 2020. Both firearms were purchased from The Bunker Gun Shop II, and both Lewis and Taylor bought firearms from The Bunker Gun Shop II on November 20, 2020. PSR ¶ 20.

The timing and number of defendant Lewis's firearm purchases, combined with the number of firearms recovered by law enforcement and the speed with which they were recovered, as well as the fact that Lewis did not report any firearms stolen, indicates that Lewis was straw purchasing firearms. And the fact that firearms purchased by Lewis and Taylor were recovered in the same arrest indicates that the firearms were resold into the illegal firearms market in the same transaction or through the same channels.

On January 28, 2021, ATF Special Agents interviewed Taylor at 200 Chestnut Street, Philadelphia, Pennsylvania to discuss his firearm purchases. Taylor said that he had purchased between 15 and 20 firearms, mainly Glocks. Taylor said that he had sold between five and seven firearms through a federal firearms licensee, but that he had only sold to an individual he identified as "Nasyr," whom Taylor stated he met through a friend he identified as "Shyeed." However, as mentioned above, an employee of King Shooters Supply indicated that Taylor also transferred a firearm to Lewis , and ATF Form 4473s and Pennsylvania records of sale confirmed that Taylor did so.

Pursuant to a subpoena, investigators obtained call detail records for a cell phone number that Taylor listed on ATF Form 4473s. The records show over 150 calls between Taylor and defendant Lewis (i.e., the phone number the Lewis listed on ATF Form 4473s) during the period of August 2020 to January 2021, including many calls on the dates on which Lewis purchased firearms: 6 calls on August 21, 2020; 6 calls on October 21, 2020; an attempted call on October 29, 2020; 5 calls on October 30, 2020; and 5 calls on January 13, 2021. PSR ¶ 17. In addition, the records show many contacts between Taylor and people that were arrested in possession of firearms originally purchased by Harmon-Catlin, indicating that Harmon-Catlin straw-purchased the firearms for Taylor and Taylor resold them. PSR ¶ 15.

Pursuant to a subpoena, investigators obtained records regarding a Cash App account belonging to Taylor. The records include multiple transactions with a contact "Rasheed," including a payment of $200 from Taylor to "Rasheed" on August 21, 2020, which, as mentioned, was one of the dates on which Lewis purchased a firearm and on which Taylor called Lewis multiple times. As discussed below, investigators obtained Facebook messages and text messages between Lewis and Harmon-Catlin, and several messages confirm that the Cash App account "Rasheed" belongs to the defendant. PSR ¶ 17.

Pursuant to a search warrant issued by the Honorable Elizabeth T. Hey on May 23, 2022, investigators obtained data associated with Facebook and Instagram accounts belonging to defendant Taylor and Harmon-Catlin, including copies of instant messages sent to or from each account. Harmon-Catlin's Facebook messages include many messages with "Sheed Sav," an account belonging to defendant Lewis, including messages about buying firearms for Taylor. For instance:

- On August 25, 2020, Lewis messaged Harmon-Catlin saying, "Yo bro said can u go to gun store with him again he going pay u." That message was sent one day before Harmon-Catlin purchased a firearm.

- On October 12, 2020, Lewis messaged Harmon-Catlin saying, "Mister looking for you." That message was sent one day before Harmon-Catlin purchased two firearms.

- On October 30, 2020, Lewis messaged Harmon-Catlin saying, "With mister making a run." That message was sent the same day that Lewis purchased two firearms.

- On November 10, 2020, Lewis messaged Harmon-Catlin saying, "can u go to gun store for me I cut you a check . .  I lost my ID." That message was sent 10 days before Lewis purchased three firearms.

*See* PSR ¶ 17.

Following Harmon-Catlin's arrest on October 26, 2021, ATF performed an extraction of a cell phone found in his possession. Through that extraction, investigators obtained copies of text messages between Harmon-Catlin and Lewis. On January 30, 2021, Lewis messaged Harmon-Catlin saying, "Call mister real quick it's important he said. . . . It's about the situation. See what we going to do." This message was sent two days after Taylor was interviewed by ATF.

Together, the evidence set forth above indicates that Lewis straw purchased the 14 firearms he purchased between August 2020 and January 2021. Lewis falsely certified on each ATF Form 4473 he completed that he was buying the firearms for himself when he was actually buying them for Taylor. Lewis straw purchased these firearms during the same timeframe as Harmon-Catlin—indeed, often on the same dates, and from the same FFLs—and the evidence of phone and text communications makes clear that both Lewis and Harmon-Catlin were working for Taylor. Lewis's straw purchases for Taylor are thus part of the same course of conduct as Harmon-Catlin's and should be considered at sentencing.

## C.    Firearm Straw Purchases and Resales by Taylor

Taylor purchased a large number of guns in his own name, too. Between April 2020 and December 2020—approximately the same time period as Harmon-Catlin and Lewis's purchases—Taylor purchased 22 firearms. *See* PSR ¶ 21. About six of these guns have been

recovered by law enforcement, including two used in shootings, and none were reported stolen.

*See* PSR ¶ 22. ATF Form 4473s indicate that Taylor purchased the following firearms:

| Date and Dealer | Firearm | Serial Number |
|---|---|---|
| April 7, 2020<br><br>Tanner's Sports Center<br>2301 York Road<br>Jamison, Pennsylvania | Glock, Model 45, 9mm semi-automatic pistol | BMFE327 [10] |
| May 22, 2020<br><br>The Bunker Gun Shop<br>549 York Road<br>Warminster, Pennsylvania | Glock, Model 48, 9mm semi-automatic pistol | BMPR744 [11] |
| July 29, 2020<br><br>Guardian Training Center<br>1528 Campus Drive Warminster, Pennsylvania | Aero Precision, Model X-15, .223 caliber semi-automatic rifle | DLR07273 [12] |
| August 14, 2020<br><br>Firearms 4 Less, LLC<br>119 Carbon Street<br>Easton, Pennsylvania | Spikes Tactical, Model ST-15, 5.56 x .45mm semi-automatic rifle | NSL016309 [13] |
| August 28, 2020<br><br>The Bunker Gun Shop<br>549 York Road<br>Warminster, Pennsylvania | Glock, Model 29, 10mm semi-automatic pistol | BPUP757 [14] |

[10] This pistol was later transferred to Harmon-Catlin.

[11] This pistol was recovered by law enforcement 314 days after purchase.

[12] This pistol was later transferred to Lewis.

[13] This pistol was later transferred to Harmon-Catlin.

[14] This pistol was transferred to Harmon-Catlin and then recovered by law enforcement in the possession of R.J. 48 days later.

| September 8, 2020<br><br>The Bunker Gun Shop<br>549 York Road<br>Warminster, Pennsylvania | Century Arms, Model Draco, 7.62 x 33mm semi-automatic pistol | PF45482020 |
|---|---|---|
| September 14, 2020<br><br>Tanner's Sports Center<br>2301 York Road<br>Jamison, Pennsylvania | Glock, Model 17, 9mm semi-automatic pistol | BNDX304 [15] |
| September 25, 2020<br><br>In-Site Firearms and Law Enforcement Supplies<br>2101 W Main Street Jeffersonville, Pennsylvania | Springfield, Model XD9 Defender, 9mm semi-automatic pistol | BY299957 [16] |
| October 26, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 19, 9mm semi-automatic pistol | ACMA722 |
| October 30, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Sig Sauer, Model P365, 9mm semi-automatic pistol | 66A662762 [17] |
| October 30, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 17, 9mm semi-automatic pistol | BNVZ069 |
| November 20, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 19, 9mm semi-automatic pistol | BDMG471 |

---

[15] This pistol was recovered by law enforcement in May 2023.
[16] This pistol was transferred to Harmon-Catlin.
[17] This pistol was recovered by law enforcement in Washington, D.C. 25 days after purchase.

| November 20, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 23, .40 caliber semi-automatic pistol | XKL796 |
|---|---|---|
| November 20, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 21, .45 caliber semi-automatic pistol | AERV009[18] |
| November 27, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | FN Herstal, Model Five-Seven, 5.7 x 25mm semi-automatic pistol | BFMH492 |
| December 4, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Century Arms, Model Draco, 7.62 x 33mm semi-automatic pistol | 1978ZD0778 |
| December 8, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 45, .9mm semi-automatic pistol | BMCP371 |
| December 8, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Springfield, Model XDM, .40 caliber semi-automatic pistol | BY447604 |
| December 11, 2020<br><br>Tanner's Sports Center<br>2301 York Road<br>Jamison, Pennsylvania | Anderson, Model A-15, .223 caliber semi-automatic rifle | 20290343 |

---

[18] This pistol was recovered by law enforcement 65 days after purchase.

| December 11, 2020<br><br>Tanner's Sports Center<br>2301 York Road<br>Jamison, Pennsylvania | Sig Sauer, Model P365, 9mm semi-automatic pistol | 66B264063 |
|---|---|---|
| December 15, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 30, .45 caliber semi-automatic pistol | PSB982[19] |
| December 15, 2020<br><br>The Bunker Gun Shop II<br>143 East Butler Avenue Chalfont, Pennsylvania | Glock, Model 19, 9mm semi-automatic pistol | BRXK747 |

The defendant lied to ATF agents about one of these guns: In his second interview with investigators, the defendant was asked about a firearm he purchased himself: a Sig Sauer, model P365, 9mm semi-automatic pistol bearing serial number 66A662762 that he had purchased on October 30, 2020. The defendant said that the firearm had been stolen around August 2021, and that he had last seen it sometime around February 2021 when he took it to a firing range because a friend wanted to see it. That statement was false: The firearm had been recovered by law enforcement in Washington, D.C. in November 2020—just 25 days after the defendant purchased it, and months before the defendant claimed to have seen it last. When confronted with this fact, the defendant ended the interview. *See* PSR ¶ 22.a.

As mentioned above, investigators obtained data associated with the defendant's Facebook and Instagram accounts, and his messages indicate he was active in firearms trafficking. His communications including messages beginning in January 2021 containing

---

[19] This pistol was recovered by law enforcement 278 days after purchase with an obliterated serial number.

pictures of firearms (including firearms that appear to be assault weapons or machine guns, and firearms that appear to have large-capacity magazines), questions from Taylor's contacts about whether he had "got something new?" or whether he was "selling?" a pictured firearm, and a reference to a "trade for another Glock."[20]  Strikingly, when ATF executed the search warrant in May 2022, the defendant's account contained no direct messages whatsoever between August and December 2020, the period of the firearm purchases charged in the indictment. Considering that the defendant was interviewed by ATF in January 2021, this gap suggests that the defendant deleted data from his Instagram account in January 2021 to avoid detection.[21] Further, the defendant's Cash App transaction records show the defendant received payments in the amount of $500 or more on or around several dates on which either the defendant, Harmon-Catlin, or Lewis purchased a firearm. At least one transaction between the defendant and an account that appears to belong to R.J.—who, as mentioned above, was arrested in possession with a firearm straw purchased by Harmon-Catlin.

Taken together, this evidence shows that the defendant straw purchased firearms under his own name as "part of the same course of conduct or common scheme or plan" in which he directed Harmon-Catlin and Lewis to straw purchase firearms for him. U.S.S.G. § 1B1.3(a)(2). The evidence further shows that the defendant was engaged in trafficking all of the straw purchased firearms. In fact, not only was there at least one instance in which a firearm purchased by Lewis and a firearm purchased by the defendant were recovered in the same arrest (discussed above), there was also at least one offender who was arrested once with a firearm purchased by Harmon-Catlin and later with a firearm purchased by the defendant: As mentioned above, K.W.

---

[20] Excerpts of the defendant's social media communications are attached as an addendum to this memorandum and will be submitted as exhibits at sentencing.

[21] The defendant has since deleted his Instagram account entirely.

was arrested in December 2021 with a Glock pistol bought by Harmon-Catlin on November 5, 2020 (and K.W. was in contact with the defendant on the day of purchase). K.W. was recently arrested again—in May 2023—when authorities executed a search warrant at a residence in southwest Philadelphia and found a firearm purchased by the defendant in September 2020. That firearm was used in a shooting in Philadelphia in September 2022.

## III.   LEGAL STANDARD

This Court follows a three-step process when sentencing a defendant: (1) calculate the defendant's guideline range, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises a ground of recognized legal merit (provided it has a factual basis) and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations and quotation marks omitted).

## IV.   SENTENCING CALCULATION

### A.   Statutory Maximum Sentence

The statutory maximum penalty for each one of the charged offenses is five years' imprisonment, up to three years' supervised release, a $250,000 fine, and a $100 special assessment per count. *See* 18 U.S.C. §§ 371, 924(a)(1), 2. Thus, the total maximum sentence for

the defendant is 140 years' imprisonment, up to three years' supervised release, a $7,000,000 fine, and a $2,800 special assessment. Forfeiture of the firearms involved in the offense also may be ordered.

**B.     Sentencing Guidelines Calculation**

The presentence report correctly calculates the defendant's guideline range at 168-210 months. The base offense level is 20 because the offense involved at least one "semiautomatic firearm . . . capable of accepting a large capacity magazine" and the defendant "committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person." U.S.S.G. § 2K2.1(a)(4)(B). Because the defendant directed Harmon-Catlin to straw purchase 48 firearms, the offense involved between 25 and 99 firearms, and a six-level enhancement applies (even without considering firearms purchased by Lewis and the defendant himself). U.S.S.G. § 2K2.1(b)(1)(C). A four-level enhancement applies because the offense involved at least one firearm with an obliterated serial number. *Id.* § 2K2.1(b)(4)(B). Another four-level enhancement applies because the defendant engaged in the trafficking of firearms. *Id.* § 2K2.1(b)(5). And a six-level enhancement applies because the defendant "transferred [] firearm[s] . . . with knowledge, intent, or reason to believe that [they] would be used or possessed in connection with another felony offense." *Id.* § 2K2.1(b)(6)(B). With a three-level reduction for acceptance of responsibility, the total offense level is 35. PSR ¶¶ 29-41. The defendant has no criminal history, resulting in a criminal history score of 0 and a criminal history category of I. PSR ¶¶ 42-45. Accordingly, the applicable guidelines range based on an offense level of 35 and a criminal history category of I is 168 to 210 months' imprisonment. PSR ¶ 92.

The defendant raises several objections to the offense-level calculation. None has merit.

The defendant objects to the base offense level of 20, arguing that "a magazine of 17 bullets does not constitute an extended clip." But the Sentencing Guidelines make clear that a firearm is a "semiautomatic firearm that is capable of accepting a large capacity magazine" so long as a "magazine or similar device that could accept more than 15 rounds of ammunition" is either "attached to it" or "in close proximity to the firearm" at the time of the offense, as the firearm will "ha[ve] the ability to fire many rounds without reloading." U.S.S.G. § 2K2.1 application note 2. The fact that some firearms, including the Glock model 17 and 45 pistols the defendant trafficked, are manufactured and sold with standard 17-round magazines, does not render the enhancement inapplicable. *See United States v. McIntosh*, No. 20-CR-40-01-CFC, 2023 WL 3073502, at *4 (D. Del. Apr. 25, 2023); *United States v. Hampton*, No. CR 21-0306 JB, 2022 WL 4016752, at *10 (D.N.M. Sept. 2, 2022).

The defendant also objects to the enhancement under Section 2K2.1(b)(4)(B), contending that the defendant "did not have any of the firearms when they had obliterated serial numbers and would not have known that someone intended to erase the serial numbers." Even if that is true, the guidelines make clear that the enhancement applies "regardless of whether the defendant knew *or had reason to believe* that the firearm . . . had an altered or obliterated serial number." U.S.S.G. § 2K2.1 application note 8(B) (emphasis added). For that reason, courts have explained that Section 2K2.1(b)(4)(B) applies a "strict liability standard." *United States v. Black*, 386 F. App'x 238, 241 (3d Cir. 2010); *see also, e.g.*, *United States v. Prien-Pinto*, 917 F.3d 1155, 1160 (9th Cir. 2019) (collecting cases); *United States v. Sands*, 4 F.4th 417, 421 (6th Cir. 2021).

Next, the defendant objects to the application of the four-level firearms trafficking enhancement. The defendant contends that, instead, the two-level enhancement added in Section

2K2.1(b)(5)(B) of the 2023 Guidelines Manual should apply. The defendant is wrong. Under the

2023 Guidelines Manual, Section 2K2.1(b)(5) instructs sentencing courts to "[a]pply the

greatest" of three potential enhancements. Subparagraph (B) provides for a two-level

enhancement if the defendant:

> (i) transported, transferred, sold, or otherwise disposed of, or purchased or
> received with intent to transport, transfer, sell, or otherwise dispose of, a firearm
> or any ammunition knowing or having reason to believe that such conduct would
> result in the receipt of the firearm or ammunition by an individual who (I) was a
> prohibited person; or (II) intended to use or dispose of the firearm or ammunition
> unlawfully; (ii) attempted or conspired to commit the conduct described in clause
> (i); or (iii) received a firearm or any ammunition as a result of inducing the
> conduct described in clause (i) . . . .

U.S.S.G. § 2K2.1(b)(5)(B) (2023). While subparagraph (B) is certainly satisfied, subparagraph

(C) is also satisfied, so its greater, five-level enhancement would apply under the 2023

Guidelines Manual. It applies if the defendant:

> (i) transported, transferred, sold, or otherwise disposed of, or purchased or
> received with intent to transport, transfer, sell, or otherwise dispose of, two or
> more firearms knowing or having reason to believe that such conduct would result
> in the receipt of the firearms by an individual who (I) had a prior conviction for a
> crime of violence, controlled substance offense, or misdemeanor crime of
> domestic violence; (II) was under a criminal justice sentence at the time of the
> offense; or (III) intended to use or dispose of the firearms unlawfully; (ii)
> attempted or conspired to commit the conduct described in clause (i); or (iii)
> received two or more firearms as a result of inducing the conduct described in
> clause (i) . . . .

U.S.S.G. § 2K2.1(b)(5)(B) (2023). Here, the defendant "disposed of . . . two or more firearms"

(he also "received" "two or more firearms" "with intent to . . . dispose of" them), and he "kn[ew]

or ha[d] reason to believe" that the firearms would be received by individuals with "a prior

conviction for a crime of violence" or "controlled substance offense" or who "intended to use or

dispose of the firearms unlawfully." Multiple firearms straw-purchased at the defendant's

direction were recovered in the possession of convicted felons, including (but not limited to) a

Glock, model 36, .45 caliber semi-automatic pistol recovered just nine days after purchase in the possession of S.B. (mentioned above), who had previously been convicted of felonies including robbery and possession of a controlled substance with intent to deliver; and a Smith & Wesson, model M&P Shield, .45 caliber semi-automatic pistol used in a shooting just 56 days after purchase, and recovered about 100 days after that in the possession of B.T., who was charged with pointing the firearm at his ex-girlfriend and strangling her, and who had previously been convicted of robbery, aggravated assault, and possession of a controlled substance with intent to deliver. *See* PSR ¶ 15.[22] Further, multiple firearms straw purchased at the defendant's direction were recovered in connection with crimes; among other examples, several guns were used in shootings, and several were recovered from individuals involved in drug distribution. *See id.* Cell phone call detail records confirm that the defendant was in contact with at least some of the individual arrested with these firearms, including on the dates they were purchased. *Id.* Moreover, the sheer number of firearms the defendant trafficked, and the defendant's extensive attempts to conceal his trafficking activities—including his use of two different straw purchasers and his sham transfers of firearms into their names, as well as his lies to ATF agents about his firearm purchases and his dealings with Harmon-Catlin and Lewis—make clear that the defendant at least "had reason to believe" his customers intended to use his firearms unlawfully.

Thus, if the 2023 Guidelines Manual were applied, the five-level enhancement under subparagraph (C) of Section 2K2.1(b)(5) would apply, not the two-level enhancement under subparagraph (B). Applying the 2023 Guidelines Manual, however, would create ex-post facto issues, as it would be greater than the four-level enhancement that would apply under "the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G.

---

[22] Criminal history records for S.B. and B.T. will be submitted as exhibits at sentencing.

§ 1B1.11(b)(1). Under Section 2K2.1(b)(5) of either the 2018 or 2021 Guidelines Manual, the defendant is subject to a four-level enhancement for "engag[ing] in the trafficking of firearms," as the defendant "transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual," and he "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual[] (I) whose possession or receipt of the firearm would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1 application note 13 (2018). Thus, the presentence report correctly applied a four-level trafficking enhancement. *See* PSR ¶¶ 3, 32 & n.6.

Finally, the defendant objects to the Section 2K2.1(b)(6) enhancement, arguing "[t]here is insufficient basis to determine that he knew, intended, or had reason to believe that the firearms would be used in connection with another felony offense." But based on the facts discussed above, the evidence amply supports this enhancement, too.

## V.   GOVERNMENT'S RECOMMENDATION CONCERNING SENTENCING

### A.   Sentencing Factors

The Court must consider all of the sentencing considerations set forth in 18 U.S.C. § 3553(a). Those factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant; (5) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**B.      Application**

A thorough consideration of the § 3553(a) factors shows that a sentence within the applicable guideline range is warranted, and the government submits that a sentence of 180 months' imprisonment, a three-year period of supervised release, and a $2,800 special assessment would be appropriate sentence in this case. Each § 3553(a) factor will be discussed in turn.

**1.      The Nature and Circumstances of the Offense**

It is hard to overstate the seriousness of this offense. As the Court is well aware, gun violence is one of the biggest and deadliest problems in Philadelphia, and the defendant is responsible for trafficking a staggering number of firearms onto the streets of the City. In less than 6 months, the defendant directed Harmon-Catlin to straw purchase 48 firearms for the defendant to resell, about 17 of which have been recovered by law enforcement, and he directed Lewis to straw purchase another 14, about 5 of which have been recovered. Those guns are on top of the guns the defendant bought himself—about 22 guns within the same approximate period, about 6 of which have been recovered. The more than 20 total guns that have been recovered by law enforcement include guns converted to fully automatic firing, guns with large-capacity magazines, and guns with obliterated serial numbers. At least *nine* of the guns have been used in shootings, and still others have been used by drug traffickers and other criminals.

Seldom can one course of criminal conduct cause so much devastation. The applicable guideline range of 168-210 months—notwithstanding the defendant's lack of criminal history—

reflects the severity of his crimes, and the government submits that its recommended sentence within that range is appropriate.

### 2.    The History and Characteristics of the Defendant

The defendant is 29 years old. PSR ¶ 50. He has a pending charge involving DUI and possession of marijuana, but otherwise has no criminal history. PSR ¶¶ 42-47. And for much of his life, he has maintained stable and successful employment, including as a cleaner, custodial supervisor, and then building engineer for the School District of Philadelphia. PSR ¶¶ 81-84.

The defendant clearly has the ability to lead a productive and law-abiding life should he choose to. The concerning part is that he chose not to. While working for the School District of Philadelphia, the defendant met Nasyr Harmon-Catlin and Rasheed Lewis (who also worked for the school district). Both men were in a period of their lives beset by substance abuse and mental and/or physical health issues. The defendant took advantage of this and used them to buy firearms he could sell to others. He even induced them to transfer into their own names firearms the defendant had already bought and planned to resell, attempting to insulate himself from law enforcement scrutiny while exposing them.

The defendant appears to be a dedicated father with strong family support. This gives hope that he will be less likely to reoffend in the future. But the defendant's decision to engage in such a serious and destructive course of conduct while gainfully employed, including enlisting two people to help him traffick more guns than he could on his own, calls for a serious penalty. The government submits that a sentence within the guideline range calculated in the presentence report would appropriately balance these considerations.

### 3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

There is a strong need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Philadelphia is overwhelmed by gun violence, and gun violence cannot exist without guns. The defendant is responsible for the illegal purchase of more than 60 guns all within a span of about five months—about a dozen guns per month—and the diversion of those guns into the illegal firearms market. The defendant obviously knew his conduct was unlawful, hence his extensive efforts to avoid scrutiny by federal authorities. The government submits that a sentence within the range calculated in the presentence report is necessary to promote respect for the law.

### 4. The Need for Adequate Deterrence and Protection of the Public

Given the prevalence of gun violence in this region, the need to deter others—and the defendant—from similar crimes is paramount. This is especially true given the efforts that gun traffickers like the defendant will employ to evade detection. Because felons are prohibited from purchasing firearms, straw purchasing is usually perpetrated by offenders (like the defendant) without a felony record, and traffickers (like the defendant) who use others to buy firearms for them will not be identified on an ATF Form 4473 or through later efforts to trace a recovered firearm. It can be difficult to identify a straw purchaser or gun trafficker until after guns have been used in crimes or otherwise recovered by law enforcement—i.e., after the damage is done. Indeed, these precise considerations were emphasized by the Congress that passed the Bipartisan Safer Communities Act of 2022: In that Act, Congress specifically directed the Sentencing Commission to "consider, in particular, an appropriate amendment to reflect the intent of Congress that straw purchasers without significant criminal histories receive sentences that are sufficient to deter participation in such activities and reflect the defendant's role and culpability,

- 25 -

and any coercion, domestic violence survivor history, or other mitigating factors." Pub. L. 117-159 § 12004(a)(5), 136 Stat. 1313, 1328 (2022). A sentence within the guideline range calculated in the presentence report would achieve Congress's goal of deterring these serious crimes.

### 5.    The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care, or additional treatment that cannot be adequately addressed by the Bureau of Prisons during imprisonment. Should the defendant desire to avail himself of opportunities for education, treatment, or training, the recommended sentence will not inhibit those efforts while in custody or on supervised release.

### 6.    The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct

Here, as in most cases, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders. The government's recommended sentence is within the applicable guidelines range and consistent with a careful consideration of the § 3553(a) factors relevant to the defendant.[23]

### 7.    The Need to Provide Restitution to any Victims of the Offense

There is no restitution at issue in this case.

---

[23] Should the Court conclude that the applicable range is significantly lower than the range calculated in the presentence report, the government submits that an upward variance would be appropriate for the reasons discussed herein.

**VI.     CONCLUSION**

All of the appropriate considerations of sentencing favor a sentence within the applicable range of 168-210 months imprisonment calculated in the presentence report. Therefore, the government respectfully requests that the Court impose a sentence of 180 months' imprisonment, three years of supervised release, and a $2,800 special assessment.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

ALEXANDER B. BOWERMAN
Special Assistant United States Attorney

Date:   March 28, 2024

## ADDENDUM – Excerpts of Defendant Taylor's Social Media Communications

| 766030-21-0022 HARMONCATLIN et al. Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | Conversation Start Date: 01/30/2021 Conversation End Date: 03/31/2022 Participant(s): ▮▮▮ |
|---|---|

| Date/Time | Sender ID | Sender Name | Message |
|---|---|---|---|
| 02/15/2021 16:38:51 | 6224232392 | Tyrell Taylor | You sent an attachment. |

| Date/Time | Sender ID | Sender Name | Message |
|---|---|---|---|
| | | |  attachments/0505216846.jpg |
| 02/15/2021 16:39:34 | ▮▮▮ | | Can't see it ,you got something new? |
| 02/15/2021 16:40:17 | 6224232392 | Tyrell Taylor | You started a video chat |
| 02/15/2021 16:41:10 | 6224232392 | Tyrell Taylor | Video chat ended |
| 02/15/2021 16:41:24 | 6224232392 | Tyrell Taylor | You started a video chat |
| 02/15/2021 16:44:14 | 6224232392 | Tyrell Taylor | Video chat ended |



1          <span style="color:red">Unclassified//Law Enforcement Sensitive</span>

| 766030-21-0022 HARMONCATLIN et al. Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | Conversation Start Date: 01/30/2021 Conversation End Date: 03/31/2022 Participant(s): ▮▮▮ |
|---|---|

| Date/Time | Sender ID | Sender Name | Message |
|---|---|---|---|
| 02/16/2021 09:09:13 | 6224232392 | Tyrell Taylor | You sent an attachment.  attachments/0505216917.jpg |
| 02/17/2021 11:50:38 | ▮▮▮ | | game sent an attachment. |

Firearm pictured is a Browning, pistol, SN 583847.

2          <span style="color:red">Unclassified//Law Enforcement Sensitive</span>



| Conversation Start Date: | 01/30/2021 |
|---|---|
| Conversation End Date: | 03/31/2022 |
| Participant(s): | |

| 05/27/2021 06:17:59 | 6224232392 | Tyrell Taylor | You started a video chat |
| 05/27/2021 06:25:21 | 6224232392 | Tyrell Taylor | You sent an attachment. |
| | | | attachments/0505216844.jpg |
| 05/27/2021 06:29:48 | 6224232392 | Tyrell Taylor | Video chat ended Missed [false] Duration [695599] |
| 05/27/2021 18:35:18 | 6224232392 | Tyrell Taylor | Where u at |
| 05/27/2021 18:35:18 | 6224232392 | Tyrell Taylor | Where u at |
| 05/27/2021 18:37:20 | | | Ty |
| 05/27/2021 19:09:47 | 6224232392 | Tyrell Taylor | How long u bouta be down there |



Unclassified//Law Enforcement Sensitive

766030-21-0022 HARMONCATLIN et al.
Facebook and Instagram Extraction
Target Account: 100001136904899, 6224232392

| Conversation Start Date: | 01/30/2021 |
|---|---|
| Conversation End Date: | 03/31/2022 |
| Participant(s): | |

| 06/22/2021 15:11:24 | 6224232392 | Tyrell Taylor | You started a video chat |
| 06/22/2021 15:12:14 | 6224232392 | Tyrell Taylor | You sent an attachment. |
| | | | attachments/0505216863.jpg |
| 06/22/2021 15:23:34 | 6224232392 | Tyrell Taylor | Video chat ended Missed [false] Duration [722594] |



Unclassified//Law Enforcement Sensitive

- 2 -



| | | | | |
|---|---|---|---|---|
| 766030-21-0022 HARMON CATLIN et al. Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | | | | **Conversation Start Date:** 01/30/2021 **Conversation End Date:** 03/31/2022 **Participant(s):** ▇▇▇ |
| 06/26/2021 11:04:19 | 6224232392 | Tyrell Taylor | You started a video chat | |
| 06/26/2021 11:06:21 | 6224232392 | Tyrell Taylor | You sent an attachment. attachments/0509216899.jpg | |
| 06/26/2021 11:06:28 | 6224232392 | Tyrell Taylor | You sent an attachment. attachments/0509216835.jpg | |
| 06/26/2021 11:08:18 | 6224232392 | Tyrell Taylor | Video chat ended Missed [False] Duration [232404] | |

The firearm pictured is from an Instagram Story by The Bunler Gun Shop on a Glock, model 19, 9 mm caliber pistol, SN: BNNK068. Records show it was purchased by a ▇▇▇ from the Bunler Gun Shop on June 25, 2021

5

**Unclassified//Law Enforcement Sensitive**



| | | | | |
|---|---|---|---|---|
| 766030-21-0022 HARMON CATLIN et al. Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | | | | **Conversation Start Date:** 01/30/2021 **Conversation End Date:** 03/31/2022 **Participant(s):** ▇▇▇ |
| 888 | 08/20/2021 16:20:24 | ▇▇▇ | | game sent a video. unified_message_3753632211404031.mp4 |
| 889 | 08/20/2021 17:05:18 | 6224232392 | Tyrell Taylor | Wat u get |
| 890 | 08/20/2021 18:21:59 | ▇▇▇ | | Went with ty mom |
| 891 | 08/20/2021 19:43:36 | 6224232392 | Tyrell Taylor | Nigga got a 19 for trade for another Glock |
| 892 | 08/20/2021 20:12:05 | ▇▇▇ | | I don't know anyone that would want it except den |

The building pictured in the video is the Bunler Gun Shop II located at 143 E Butler Ave,   Chalfont , PA

6

**Unclassified//Law Enforcement Sensitive**

- 3 -





| 766030-21-0022 HARMONCATLIN et al. Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | Conversation Start Date: 01/30/2021 Conversation End Date: 03/31/2022 Participant(s): ▮ |
|---|---|

| 03/19/2022 23:12:44 | 6224232392 | Tyrell Taylor | You sent a photo. attachments/0505216821.jpg |
| 03/20/2022 01:31:43 | ▮ | | Selling? |
| 03/20/2022 01:47:06 | 6224232392 | Tyrell Taylor | Yea they want 13 |
| 03/20/2022 01:47:26 | 6224232392 | Tyrell Taylor | Some nigga from north |

7                                   Unclassified//Law Enforcement Sensitive



| 766030-21-0022 HARMONCATLIN et al. Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | Conversation Start Date: 10/12/2021 Conversation End Date: 01/23/2022 Participant(s): ▮ |
|---|---|

| 12/11/2021 14:27:40 | ▮ | | My man from New York he said if he get me a drac or scorpion 9 trade em the 19x what u think |
| 12/11/2021 14:28:03 | ▮ | | At pistols 625 |
| 12/11/2021 14:28:20 | ▮ | | Ar-pistols* |
| 12/11/2021 14:33:24 | 6224232392 | Tyrell Taylor | That a deal but only if micro Draco because u can trade for two straps |
| 12/11/2021 14:35:01 | ▮ | | Rd bet so that's cool |
| 12/11/2021 14:35:14 | ▮ | | I need two glocks tho |

9                                   Unclassified//Law Enforcement Sensitive

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served by electronic filing on all counsel of record.

ALEXANDER B. BOWERMAN
Special Assistant United States Attorney

Date:  March 28, 2024