```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                            *
  United States of America,  * Docket # 23-cr-00268
                            *
          Plaintiff,         *
                             * United States Courthouse
         vs.                 * Courtroom 11A
                             * Philadelphia, PA
  Mister Tyrell Taylor,      * November 2, 2023
                             * 11:05 a.m.
          Defendant.         *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE GERALD J. PAPPERT
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

| | |
|---|---|
| For The Plaintiff: | Alexander B. Bowerman, Esquire<br>U.S. Attorney's Office<br>District of Pennsylvania<br>Criminal Division<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA  19106 |
| For The Defendant: | Mark T. Wilson, Esquire<br>Defender Association of<br>Philadelphia<br>Suite 540 W, The Curtis Center<br>601 Walnut Street<br>Philadelphia, PA  19102 |
| Audio Operator: | C. Kurek |
| Transcribing Firm: | Principle Court Reporting<br>Services, Inc., 544 Grove Ave.,<br>Suite 1, Johnstown, PA  15902<br>Telephone: 814-269-4666 |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

I N D E X

|                          | PAGE |
|--------------------------|------|
| DISCUSSION AMONG PARTIES | 3    |
| CERTIFICATE              | 35   |

E X H I B I T S

(NONE OFFERED)

3

THE COURT:  Mr. Bowerman, how are you today?

MR. BOWERMAN:  I'm all right, Your Honor.  How are you doing?

THE COURT:  Good.  Mr. Wilson.

MR. WILSON:  Good morning, Your Honor.

THE COURT:  How's it going?

MR. WILSON:  I -- wouldn't do any good to complain.

THE COURT:  Well, don't sell yourself short, Mark.

MR. WILSON:  I've overbooked myself today.

THE COURT:  And Mr. Taylor.

THE DEFENDANT:  Good morning.  How are you doing, Your Honor?

THE COURT:  I'm doing fine.  So this is the case of The United States versus Mister -- which is your given first name; correct?

THE DEFENDANT:  Yes.

THE COURT:  Mister Tyrell Taylor.  Criminal case 23-268.  And Mr. Taylor has been charged in a 28-count indictment with conspiracy and aiding and abetting false statements to a Federal Firearms Licensee in violation of 18 United States Code Sections 371 and 942(a)(1)(A) and (2).  And the charges arise out of Mr. Taylor's participation in the straw purchase of at least 48 firearms between August and December of 2020.  And the purpose of our proceeding today is for the defendant to change a previously entered plea and enter

4

a plea to the indictment.  So Mr. Wilson, if you and your client would please come forward, we can have Mr. Lucini swear in Mr. Taylor and then begin.

TYRELL TAYLOR, DEFENDANT, SWORN

THE COURT:  And so what is your full name, sir?

THE DEFENDANT:  My first name is Mister-Tyrell.  It's hyphenated.

THE COURT:  Hyphenated, M-I-S-T-E-R, hyphen, T-Y-R-E-L-L?

THE DEFENDANT:  Yes.

THE COURT:  Mister-Tyrell?  Do you have a middle name?

THE DEFENDANT:  Isaac.

THE COURT:  Isaac?

THE DEFENDANT:  Yep.

THE COURT:  All right.  And have you any -- ever used or gone by any other names?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Nicknames?

THE DEFENDANT:  No.

THE COURT:  Nothing?  Okay.  So Mr. Taylor, I'm going to ask you a number of questions this morning and assume that the answers that you give me are the truth.  Is that understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And since you're now sworn and under oath, do you understand that if you do not tell the truth in answering my questions that you will be subject to the penalties of perjury or making a false statement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand I will ask you questions in order to satisfy myself that you are competent, that you're able to change a plea, and that you are knowingly and voluntarily giving up your rights in changing your plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, if at any time you do not understand or hear -- hear me or understand what I'm asking you, tell me and I will repeat it or rephrase it.  Okay?

THE DEFENDANT:  Okay.  Yes.

THE COURT:  If at any time you want to talk to Mr. Wilson, tell me.  You'll be allowed to do that.  All right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Please also continue to make sure that you speak your answers as opposed to nodding your head so that we have an accurate transcript of the proceedings.  All right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Taylor, has anyone given you any directions not to tell the truth hear today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And how old are you, sir?

6

THE DEFENDANT:  I'm 28, about to be 29.

THE COURT:  And what is your level of education?

THE DEFENDANT:  High school.

THE COURT:  Did you graduate from high school?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Where did you attend high school?

THE DEFENDANT:  Overbrook High School.

THE COURT:  Okay.  And what was your most -- or are you currently employed?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And what is your -- what do you do?

THE DEFENDANT:  I'm a security guard for Allied Universal.

THE COURT:  Okay.

MR. WILSON:  Your Honor, he -- he's an unarmed security guard at a (indiscern.) house as I understand (indiscern.).

THE COURT:  Okay.

MR. WILSON:  Or that's where (indiscern.)

THE COURT:  Mr. Taylor, have you taken any drugs, medications, or pills of any kind -- and that means prescription medications, over the counter medications, illegal drugs, anything -- within the last 24 hours?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Please tell me about it.

7

THE DEFENDANT:  I have a prescription medicine for hyperactive thyroid.

THE COURT:  Okay.  Is that it?

THE DEFENDANT:  Yes.

THE COURT:  And then does that medication give you any side effects at all?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Have you consumed any alcoholic beverages within the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And how do you feel today?

THE DEFENDANT:  I feel good.

THE COURT:  All right.  Are you lightheaded or dizzy in any way?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you confused in any way?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you able to think clearly today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel that your judgement is impaired in any way?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you able to understand the nature and the consequences of this proceeding?

THE DEFENDANT:  Yes, Your Honor.

8

THE COURT:  And you're able to hear and understand my questions and give me your best truthful answers?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Taylor, have you ever been hospitalized or treated -- and that would mean any kind of treatment, inpatient, outpatient, group therapy, anything -- for any form of mental illness?  And that would include depression, anxiety, any form of mental illness at all?

THE DEFENDANT:  No, Your Honor.  Only for rehab for marijuana.

THE COURT:  All right.  That's my next question. Have you ever -- have you ever been hospitalized or treated for any form of drug addiction?

THE DEFENDANT:  Just marijuana.

THE COURT:  And -- and what was the nature of your treatment and when was it?

THE DEFENDANT:  I was working at the school district. They wanted me to get the help to continue my job when I tested positive for my drug test.

THE COURT:  And when was that?

THE DEFENDANT:  This was a year ago.

THE COURT:  And what was the nature of your treatment?

THE DEFENDANT:  Just random urines and having to sit into counseling sessions --

THE COURT:  Okay.

THE DEFENDANT:  -- with a therapist.

THE COURT:  Are you still attending those sessions?

THE DEFENDANT:  No, Your Honor.

THE COURT:  When did you last attend them?

THE DEFENDANT:  I believe the last summer, Your Honor.

THE COURT:  All right.  Have you ever been hospitalized or treated for any form of addiction to alcohol?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you currently under the care of a doctor for your thyroid --

THE DEFENDANT:  Yes.

THE COURT:  -- issue?  Are you under the care of a doctor or medical professional for any other condition?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Taylor, do you understand that you have the right to be represented by an attorney at every stage of the proceeding against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that if -- if you cannot afford the services of an attorney, one will be appointed to represent you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you have a lawyer that's been

10

appointed to represent you, and that's Mr. Wilson; right?

THE DEFENDANT:  Yes, sir.

THE COURT:  And have you had enough time to talk to Mr. Wilson about your case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you had enough time to talk to him about -- specifically about today's proceeding?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you satisfied with your lawyer's representation?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you received a copy of the indictment?  That is the -- the written charges that were made against you by the grand jury.

THE DEFENDANT:  No, sir.  They told me I wasn't allowed to have a copy.

THE COURT:  Mr. Wilson?

(Pause in proceedings)

MR. WILSON:  I -- I think, Your Honor, he's referring to the discovery.

THE COURT:  Okay.

(Pause in proceedings)

THE DEFENDANT:  Oh.  Yes, Your Honor.  I have this.

THE COURT:  Okay.  When you say this, are you -- Mr. Wilson's go the --

11

THE DEFENDANT:  The indictment.

THE COURT:  -- he has the indictment in front of him?

THE DEFENDANT:  Yes, sir.  Sorry.

THE COURT:  Okay.  Very good.  So you have a copy of the indict -- have you had a chance to talk to Mr. Wilson about the charges against you that are in that indictment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And I outlined those charges at the beginning this morning.  Do you -- do you understand the charges against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And do you understand that you are charged with committing a number of felony offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I want to go over, now, the rights that you have and -- so that you understand those rights and that -- particularly, so that you understand the rights that you would be giving up with your entry of a guilty plea today.  Okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that by pleading guilty, you are giving up your right to challenge the indictment that was returned against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You'd also be able to challenge the proceedings that the grand jury used in obtaining that

indictment.

MR. WILSON:  Your Honor, may I have --

THE COURT:  Sure.  Of course.

(Pause in proceedings)

THE DEFENDANT:  Yes, Your Honor.  I understand.

THE COURT:  Yeah.  Well, let me -- I know you had a moment there to talk with Mr. Wilson, which is fine.  Let me just repeat the question so the record's clear.  Do you understand that by pleading guilty, you are giving up your right to challenge the -- the -- the proceedings that the grand jury used in obtaining that indictment?

THE DEFENDANT:  Yes, Your Honor.  I understand.

THE COURT:  Okay.  Do you understand that you're entitled to plead not guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead not guilty, you would have the right to be tried by a jury or by a judge without a jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead not guilty, that through your attorney, you could participate in the selection of the jury which would hear your case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead not guilty, you have the right to be tried with the assistance of

counsel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that at trial, you would be presumed to be innocent?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The government would be required to prove that you're guilty by competent evidence and beyond a reasonable doubt and you never have to prove your innocent, the government always has to prove you're guilty.  Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that in the course of a trial, witnesses for the government would have to come to court and testify in your presence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that you would have the right to confront those witnesses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that your lawyer could cross examine the government's witnesses, object to any evidence offered by the government, and offer evidence on your behalf?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that by pleading guilty, you are giving up your right to challenge the manner in which the government obtained any and all evidence against you?

THE DEFENDANT:  Yes, Your Honor.

14

THE COURT:  By pleading guilty, you are giving up your right to challenge the charges in this case, the manner in which the government investigated and prosecuted the case, and any other matter which arose prior to your guilty plea. Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that at trial, you have the right to subpoena and compel the attendance of witnesses?

(Pause in proceedings)

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that you would have the right to present witnesses, including character witnesses, whose testimony could raise a reasonable doubt about your guilt?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that at a trial, while you would have the right to testify if you chose to do so, you would also have the right not to testify?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At -- and that no inference or suggestion of guilt could be drawn from the fact that you chose not to testify.  That decision could not be used against you in any way.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that your lawyer could argue to the jury or to the court on your behalf and against

the government's case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you could only be convicted by a jury which unanimously found you guilty?  The jury's verdict would have to be unanimous.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, if at trial, you are found to be guilty, do you understand that after a trial, you would be able to appeal the verdict to an appellate court?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that you could have a lawyer represent you on such an appeal?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that the appellate court might reverse your conviction?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that by pleading guilty, you are limiting your rights of appeal, specifically, that after your sentencing, you may only appeal errors in this proceeding today or in the sentence that I impose?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, if you plead guilty and I accept your plea, do you understand that you will waive -- that means you will give up forever -- your right to a trial of any kind as well as all the other rights we've just gone over and that

there will be no trial?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you plead guilty, I will enter a judgement of guilty and I will sentence you on the basis of your guilty plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And when I sentence you, I will take into account the advice of the sentencing guidelines, certain legal factors that I'll go over in a moment, and the presentence investigation report.  Do you understand, generally, that that's how the sentencing process will work?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, the law requires me to take into account certain factors in deciding on an appropriate sentence for you, and I want to just go over a few -- not all of them, but just some of them so you get a sense for what I have to consider when I sentence you.  All right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I'm required to consider the nature and the circumstances of your crimes, your history and characteristic, the -- characteristics -- the need for the sentence to reflect the seriousness of your crimes, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes you might commit.  Understand that those

are just some of the things that I have to take into account when I sentence you.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I want to now go over with you what we call the essential elements of the crimes to which -- with which you have been charged.  And I do that principally so that you can understand exactly what the government would have to prove to convict you should you take the case to trial.  Okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  So now, remember, you've been charged with 28 counts of both conspiracy and aiding and abetting false statements to a Federal Firearms Licensee.  So let's first address the conspiracy count, and that's a violation of 18 United States Code Section 371.  To convict you of violating that statute, the government must prove the following five elements and they have to prove all of them beyond a reasonable doubt.  First, that two or more persons agreed to commit and offense against the United States as charged in the indictment; second, that you were a party to or a member of that agreement; third, that you joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; fourth, that you and at least one other alleged conspirator shared a unity of purpose and the intent to achieve

18

a common goal or objective, which was to commit an offense against the United States; and fifth, that at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.  Do you understand those five elements of the conspiracy charge?

THE DEFENDANT:  Yes, sir.

THE COURT:  Second, you've been charged with violations of 18 United States Code Section 924(a)(1)(A), and that's the false statements to the federal arms -- Federal Firearms Licensees.  To establish a violation of that statute, the government has to prove three things.  First, that you knowingly made a false statement or a representation; second, that you made the statement or representation to a licensed dealer, importer, manufacturer, or collector of firearms within the meaning of the United States Code; and third, that you -- the -- the statement that you made pertained to information that the law requires the licensed dealer, importer, or manufacturer or collector to keep.  Do you understand those three elements of that charge?

THE DEFENDANT:  Yes, sir.

THE COURT:  And finally, you've been charged with aiding and abetting the making of false statements to a Federal Firearms Licensee.  To convict you on the aiding and abetting charge, the government has to prove four things -- again, all

beyond a reasonable doubt.  First, that you committed the crime of making a false statement to the -- to a Federal Firearms Licensee -- that the principal -- excuse me -- committed the crime of making a false statement to a Federal Firearms Licensee, as we've already described it; second, that you knew that that offense was going to be committed or was being committed by the principal; third, that you knowingly did some act for the purpose of aiding, assisting, soliciting, or encouraging the principal in committing the offense and with the intent that the principal commit that offense; and fourth, that you -- you performed an act in furtherance of the offense charged.  Do you understand those four elements of the aiding and abetting charge?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Mr. Bowerman, could you please go over for us the factual basis for Mr. Taylor's plea today?

MR. BOWERMAN:  Yes, Your Honor.  So this is set forth in our change of plea memorandum, starting at the bottom of page 3.  The defendant conspired with a person named Nasir Harmon-Catlan (phonetic) and persuaded Mr. Harmon-Catlan to purchase firearms on his behalf by having Mr. Harmon-Catlan make false statements on ATF form 4473s.  And those are forms that are required by law to be completed truthfully during the purchase of a firearm and then the firearms dealer, or FFL, Federal Firearms -- Federal Firearms Licensee, must keep those

forms in their records. So specifically, the false statement that was being made was that Mr. Harmon-Catlan certified he was the actual purchaser of the firearms, when in fact he was buying them for the defendant. So the defendant decided what gun stores -- which is, again, FFLs or Federal Firearms Licensees -- the two would visit and provide instructions to Mr. Harmon-Catlan about what firearms he would purchase and how much money to spend. The defendant or somebody else would then drive Mr. Harmon-Catlan to FFLs and either provide directions over the phone about how to complete the purchase or actually go inside the FFL with Mr. Harmon-Catlan. At least one employee from one of the FFLs from which the firearms were purchase would testify that they saw Mr. Harmon-Catlan and the defendant together on the same date that some of the charged firearms were purchased. It would also testify that the defendant was a regular customer in that store. So the defendant would pay the straw purchaser, Mr. Harmon-Catlan, either in cash or in other forms of compensation in exchange for the firearms that Mr. Harmon-Catlan would give to the defendant after purchasing them from the FFLs. In addition to just buying firearms from these stores, the defendant also paid Mr. Harmon-Catlan to sign paperwork that purported to transfer firearms that had previously been in the defendant's name into Mr. Harmon-Catlan's name, but then the defendant would take possession of those firearms himself. So between August and

21

December of 2020, the defendant directed Mr. Harmon-Catlan to straw purchase at least 48 firearms, and that includes approximately four firearms that the defendant purported to sell, in other words, firearms that were in the defendant's name that were transferred into Mr. Harmon-Catlan's name, but that the defendant maintained possession of.  Based on police records, approximately 17 of those firearms, a little more than one-third, have been recovered by law enforcement.  That includes guns that were recovered in connection with shootings in Philadelphia.  And we list a few of those examples in our change of plea memo on pages 4 and 5.

MR. WILSON:  And Your Honor, for the record, I would just state that I had provided a copy of the government's plea memorandum to my client last week sometime and he has indicated to me that he has reviewed this and gone over the factual basis and that he told me that he had no issues with any of the facts that were stated.

THE COURT:  Very well.  Thank you.

MR. WILSON:  That'll help summarize the --

THE COURT:  Okay.

MR. BOWERMAN:  So Your Honor, just to -- to finish up our summary --

THE COURT:  Yeah.

MR. BOWERMAN:  -- of the evidence we would present, some of this is listed on page 6.  We would present a

significant amount of cell phone evidence supporting the charges in the indictment. There were over 350 call events between the defendant and Mr. Harmon-Catlan between August 2020 and February 2021 that includes many calls on the dates that the firearms were purchased. We also would provide text messages between the straw purchaser and another member of the conspiracy whom we identify as Person Number 1 in the indictment. That person's name is Rasheed Lewis (phonetic). And those text messages further indicated that the defendant was using Mr. Harmon-Catlan to illegally obtain firearms. Some examples would be messages like Mister looking for you and bro said can you go to the gun store with him again, he going to pay you. And we also have, Your Honor, evidence showing that the defendant communicated with at least some of the people that were arrested in possession of firearms that were originally purchased, according to ATF records, by Mr. Harmon-Catlan. We give two examples at page 7 of our change of plea memo. One of them is a person we identify as R.J. That person's name is Rasheed Jones. R.J. was arrested in possession of a firearm purchased by Mr. Harmon-Catlan, and we have call detail records showing that the defendant's phone had at least 89 call events between the defendant and that person identified as R.J. around the time of the conspiracy, August 2020 to January 2021. That includes a call on the day that the defendant purportedly transferred the firearms in his

23

name into Mr. Harmon-Catlan's name, as well as calls shortly after Mr. Rasheed Jones was arrested.  Another example, Your Honor, is a person we identify as K.W., that's a person named Kenshawn Walker (phonetic).  He was also arrested in possession of a firearm that was purchased by Mr. Harmon-Catlan and there are call detail records showing communications between Kenshawn Walker and the defendant.  Finally, Your Honor, we discuss in our memorandum some false statements that the defendant made during the course of the ATF investigation which we would submit shows consciousness of appeal.  We give an example in here that the defendant admitted that he knew Mr. Harmon-Catlan in an interview with ATF agents.  He told the agents that he saw Mr. Harmon-Catlan about five or seven times through an FFL. But he was asked about that gun that was found in the possession of Rasheed Jones, who we were just discussing, the defendant just said that he sold the firearm to Mr. Harmon-Catlan and otherwise knew nothing about the recovery of the firearm by police.  But as mentioned, the call detail records show both that the defendant was in -- in contact with Mr. Jones on the date that the firearms transferred and immediately after Mr. Jones' arrest.

THE COURT:  Thank you, Mr. Bowerman.  I -- I --

MR. BOWERMAN:  Thank you, Your Honor.

THE COURT:  -- appreciate that.  So Mr. Taylor, do you understand that you have the right to have the facts that

24

the prosecutor just recited and the facts that are stated in the factual basis for the plea section and the change of memo -- the change of plea memo that Mr. Wilson told -- told me you have no issues with -- do you have -- you have the right to have all those facts submitted to the jury and proven beyond a reasonable doubt?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you agree that the government has accurately and correctly summarized the factual basis for your plea, both in the change of plea memo and here in court today, that you will have admitted these facts?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that I they -- may then use these facts to enhance your criminal history category, your total offense level, or for any other reason during your sentencing?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In light of these circumstances, do you agree that the government correctly and accurately summarized the facts of the case against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you do what the prosecutor said you did and do you fully admit those facts?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Bowerman, could we also go

over, please, the potential -- the maximum penalties that Mr. Taylor faces to include any mandatory minimums, fines, and special assessments?

MR. BOWERMAN:  Yes, Your Honor.  So these are set out at page 3 of our change of plea memorandum.  There are no applicable mandatory and minimum penalties, but I'll discuss the maximum penalties.  On each count, both the conspiracy count and each one of the 18 USC 924(a)(1)(A) counts, the statutory maximum penalty is five years' imprisonment, up to three years of supervised release, a $250,000 fine, and a $100 special assessment.  So the total maximum sentence across each of the 28 counts is 140 years' imprisonment, up to three years supervised release, a $7,000,000 fine, and a $2,800 special assessment, as well as forfeiture of the 48 firearms involved in this offense that are listed in the indictment that (indiscern.).

THE COURT:  Thank you.  Mr. Wilson, did Mr. Bowerman correctly state the potential maximum penalties that your client faces?

MR. WILSON:  He did, Your Honor.

THE COURT:  And Mr. Taylor, do you understand that the maximum penalties you face are those that the prosecutor just went over?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  I mentioned earlier the sentencing

guidelines.  And may I assume that you and Mr. Wilson have discussed the sentencing guidelines at least to some extent?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that those guidelines are advisory?  That means they are not binding upon the probation officer or me.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So in other words, no matter what the government might think the guidelines say or what you or Mr. Wilson think the guidelines say, none of that is binding on me because I am the one who will ultimately decide how the -- the guidelines will operate in your case.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that I will not be able to determine how those guidelines will be applied in your case until after the presentence investigation report is completed and you and the government have had the opportunity to read and challenge any facts in that report?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you go back to those legal factors that I went over with you earlier, those things that I have to consider at your sentencing, and do you understand that in appropriate circumstances and in light of those legal factors, I could impose a sentence which is either more severe or less severe than the sentence that the advisory guidelines

27

recommend?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that you will not be able to withdraw your guilty plea if I impose a more severe sentence than you expect or that anyone else recommends?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has anyone promised you or led you to believe that you will receive a particular sentence?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you understand that parole has been abolished in the federal system and that you will not be released on parole if you're sent to prison?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you're sent to prison, a term of supervised release will be impose for -- for when you are released from prison?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that if you violate the terms of your supervised release, you could be returned to jail?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So Mr. Taylor, have you discussed with Mr. Wilson the charges against you, your right to contest them, and the maximum possible penalties that you face?

(Pause in proceedings)

THE DEFENDANT:  Yes, Your Honor.

28

THE COURT:  And do you understand that by pleading guilty and by waiving all of the rights that I've discussed with you, you cannot later come to any court and claim that you're not guilty or that your rights were violated?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has anyone threatened you, coerced you, or forced you in any way to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone promised you or offered you anything to get you to plead guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Is the decision to change your plea to guilty been made of your own free will?  Is it your decision?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that the offenses to which you are pleading guilty are felony offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that if I accept your plea, you will be adjudged guilty of these offenses and such an adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, having heard from me what your rights are if you plead not guilty and what might happen if you

plead guilty, do you still wish to give up your rights to a trial and plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do either attorney have any doubt as to the defendant's competence to enter a plea?

MR. BOWERMAN:  No, Your Honor.

MR. WILSON:  No, Your Honor.

THE COURT:  Are counsels satisfied that his willingness to plead guilty is voluntary?

MR. BOWERMAN:  Yes, Your Honor.

MR. WILSON:  I am, Your Honor.

THE COURT:  Are counsels satisfied that any guilty plea is being made with a full understanding by the defendant of the nature of the charges, the maximum possible penalty provided by law, and his legal rights to contest the charges?

MR. BOWERMAN:  Yes, Your Honor.

MR. WILSON:  I'm so satisfied.

THE COURT:  Are counsels satisfied that there is a factual basis for the plea?

MR. BOWERMAN:  We are, Your Honor.

MR. WILSON:  I am.

THE COURT:  Do either attorney have any questions or anything else they wish to take up before Mr. Lucini takes the new plea?

MR. BOWERMAN:  No, Your Honor.

MR. WILSON:  No, Your Honor.

THE COURT:  And Mr. Taylor, you will be -- you will obviously have an opportunity to speak to me more fully at your sentencing and there's nothing else you need to say today.  Is there anything else you want to say today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Very well.  Then Mr. Lucini, if you would please take the new plea.

THE CLERK:  Mister-Tyrell Taylor, you appeared to court, pled not guilty to criminal indictment number 23-268 charging you with count 1, conspiracy in violation of Title 18 United States Code Section 371, counts 2 through 28, making false statements to a federal fire -- firearms licensee in violation of Title 18 United States Code Section 924(a)(1)(A) and (2), aiding and abetting.  Now say guilty or not guilty.

THE DEFENDANT:  Guilty.

THE COURT:  Well, based on my colloquy here this morning with Mr. Taylor as well as, obviously, Mr. Bowerman and Mr. Wilson, I -- I can find that the defendant is competent to change his plea.  And Mr. Taylor, you're pleading guilty because you are, in fact, guilty as charged; right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  That he's competent to change his previous plea and to enter an informed plea.  I find that his plea of guilty is knowing, voluntary, and intelligently made

and is not the result of any force or threats or promises. I find that there's a factual basis for the plea of guilty that the defendant understands the charges, his legal rights, and the maximum possible penalties and that the defendant understands he is waiving his right to a trial and that by pleading guilty he is greatly limiting his rights of appeal. Based on those findings, I accept the guilty plea and adjudge -- the defendant is now adjudged guilty. I'll order a presentence investigation report to be prepared by the probation office. As I mentioned, you and Mr. Wilson will have the opportunity to read and to comment on that presentence report before your sentencing. Under Federal Rule of Criminal Procedure 32(f)(1) and (2), both parties must inform each other and the probation officer in writing of any objections to the presentence report within 14 days of receiving it. And under Local Rule of Criminal Procedure 32.3 paragraph 4, untimely objections to the presentence report are deemed waived. You and Mr. Wilson and anyone else if you wish will have the opportunity to speak on your behalf at your sentencing and we've scheduled your sentencing for February 28, 2024, at 10:00 a.m. here in Courtroom 11A. The sentencing memoranda should be delivered to the court no later than one full calendar week before sentencing date. Mr. Taylor is not in custody and I have a copy of the pretrial services report stating his conditions of release. Is there -- are those

conditions sufficient at this time?

MR. BOWERMAN:  Yes, Your Honor.

THE COURT:  Okay.  Very well.  I did notice in here, Mr. Taylor --

MR. WILSON:  Your Honor, may I just have one moment --

THE COURT:  You may.

(Pause in proceedings)

MR. WILSON:  Your Honor, may I just raise one issue with respect to the current conditions?  My client is on home confinement --

THE COURT:  Mm-hm.

MR. WILSON:  -- so that he'll have to work.  He has asked the probation officer previously whether he could have some time out his -- with his children with whom he does not live.  He's -- he's married to their mother, but they're separated and -- and not divorced.  He wants to be able to visit with his children and it -- that it -- you know, on a schedule that would be approved by the probation office, but the probation office indicated that -- that Mr. Harris indicated that he would need the court's permission in order to allow that.  And I don't know if Your Honor wants a written motion in that regard or whether Your Honor would care to allow him a couple hours a week to visit with his children.

THE COURT:  What do you think?

MR. BOWERMAN:  No objection, Your Honor.

(Pause in proceedings)

THE COURT:  Yeah.  I think -- why don't you file something appropriate.  We'll give it to pretrial, we'll take it from there.

MR. WILSON:  Thank you, Your Honor.

THE COURT:  You're welcome.

MR. WILSON:  Your Honor, the whole motion or just the proposed order?

UNIDENTIFIED SPEAKER:  Order's fine.

THE COURT:  Short motion with an order.  You don't have to --

MR. WILSON:  Thank you.

THE COURT:  It doesn't need to be War and Peace.  Look, Mr. Taylor, you've got a number of conditions of release.  You've done well with a number of them, but you do have a couple positive urines for marijuana; right?

THE DEFENDANT:  Yeah.

THE COURT:  If you violate any of these conditions of release, including the positive drugs tests, I could very well revoke your pretrial release and put you in jail pending your sentencing.  Okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So you need to -- you need to comply with all of these conditions.  All right?  If the probation office

34

feels that you're not in substantial compliance, they're going to give me a motion to revoke your pretrial release conditions and I'd have to think about that pretty seriously.  All right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  So Mr. Taylor, you must appear on your date for sentencing.  If you fail to appear in court on the date for your sentencing or for any other court proceeding, you are subject to a maximum penalty of ten years in jail and a fine of up to $25,000 under 18 United States Code Section 3146, and that is separate from and in addition to what you're already facing.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition, if you fail to appear for sentencing or for any other court proceedings, you are subject to forfeiting to the United States any money or property that you have designated and posted with the court as a condition of your release.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Counsel, anything else you wish to discuss?

MR. BOWERMAN:  Nothing from the government, Your Honor.

THE COURT:  Okay.  Mr. Wilson, anything else?

MR. WILSON:  I have no (indiscern.).  Thank you.

THE COURT:  Good.  Thank you.  Okay.  We're

35

adjourned.

                    C E R T I F I C A T E


     "I, Kaitlyn Stewart,  court-approved transcriber, certify

that the foregoing is a correct transcript from the official

electronic sound recording of the proceedings in the above-

entitled matter."



_____          6-18-24
Signature for Approved Transcriber          Date
Kaitlyn Stewart